Good morning and welcome to Seattle. Welcome to the Nakamura Courthouse. We're pleased to be here today. This is the time set for re-hearing en banc in the case of Crista Ramos v. Chad F. Wolf. If the lawyers are ready to proceed, you may come forward. Thank you, Your Honor, and may it please the Court, Jerry on behalf of the United States. This appeal arises from and concerns the validity of a preliminary injunction that was entered several years ago and that bars the Secretary of Homeland Security from implementing four decisions related to the termination of TPS. The current Secretary has taken affirmative and formal action to reverse those decisions, has explained why they are incorrect, and has reinstated TPS for all four countries. The primary junctions are therefore no longer in any effect, and they certainly, they concern decisions that are no longer of any legal validity, and the government would simply like to move on from this litigation and move on from the defense of decisions it no longer agrees with and believes we're in error. And you're asking us to dismiss this, but I guess the question that I would have, the dismissal would be discretionary, correct? And what's the government's position about whether this appeal is moot? Because there's a bit, they're a bit intertwined, and so if the case is factually moot, why doesn't it fit within the capable of repetition yet evading review exception to mootness? So, Your Honor, there's a lot, I think, packed into that question. There is, but I'm sure you can handle it. So, first answer is yes, we believe this appeal is moot, that the joining those decisions is therefore moot. So, are you asking us to dismiss it as moot, because in your papers that you'd filed previously prior to some of the rescissions happening formally in the last couple days, to appeal the dismiss, to dismiss the appeal and send it back to the district court, and for the district court to dismiss as moot, or to take up the mootness issue. Are you, at this point, are you asking us to dismiss it as moot, or would, I guess, maybe even more specifically, is it more appropriate for us to dismiss it as moot? So, we are not asking Your Honors to dismiss it as moot. We're just simply asking Your Honors to return this case to the district court. So, that means voluntarily dismissing your appeal? That's what you said in your papers. We are voluntarily dismissing. Now, we have no objection if this court would like to dismiss it as moot. So, getting back to Judge Callahan's question, because you're still not quite answering, I think Chief Judge McGee is asking whether your position today is that you want to voluntarily dismiss this appeal? Yes. Yes. All right. So, Judge Callahan then asked you, sir, whether the first thing baked into her question is, is that discretionary? Yes, it is, Your Honor. All right. And then I think the next thing, although she can certainly correct me, is the mootness question. Sure. Now, I would like to say, when parties seek voluntary dismissal, it is routinely granted, and it's extraordinary for this court not to do so, and I think under these circumstances, where the government has taken affirmative action to reverse a major policy decision, that to reject the government's request would itself be extraordinary, even if this court... I'm not skipping over that lightly. I'm just trying to get you back to Judge Callahan's question, because I think you skipped a few steps. Sure. I just want to make sure that that isn't a distinct issue. But isn't our case law now, because I want to make sure you address it in your response, that when it's opposed, circumstances may arise which demand in the interest of justice that the court deny the Pellitt's motion to voluntary dismiss. So, if you can address that as you respond, please. Okay. You know, I would... One issue I'd like to address is the voluntary, or the capable of repetition, yet evading review point. I think, as this case illustrates, there are a number of safeguards in place that, if TPS is ever terminated again in the future, and that is speculative on itself, that, as this case illustrates, a secretary must announce publicly in a Federal Register notice, explain the reasons given, well before, at least 60 days before, the effective date of the termination. And often, it's longer than that. It's usually a year or more. And so, if... And I can even... That's the evading review part of it. No, but it's not, counsel. So, I'm a little surprised you're jumping to mootness on this point of mootness, because, of course, that's not what happened in the prior proceeding. The district court found that there hadn't been any announcement, or even acknowledgment, of the change in position. So, now you're sort of losing me here. Well, Your Honor, the thing that was set aside and enjoined is these termination decisions. So, I'm responding to the point of, could these termination decisions be reinstated? And they can't be. And so, that was... That is the subject of the injunction. And if a termination ever occurs again, all I'm saying is it would not evade review on any grounds. Well, it would be completely different facts. Exactly. It would also be completely different facts, completely different circumstances, et cetera. Were you here the first time? I was, Your Honor. That's what I thought. But we've aged all of it since then. Sorry to hear that. I remember your counsel on the other side, your friendly counsel, because his name's so hard to pronounce. But I was trying to remember. So, you know, I guess... And he's probably going to get up and say, don't dismiss it. Don't say it's moot. And get to the merits. The first opinion, obviously, was one that was withdrawn because we're on bonk. And Judge Christin and I were there. And I'm assuming that counsel for the... Well, I'm going to call them the plaintiffs. Would want... They want some determination here to say they would like to get to the merits, I'm going to say, don't get to the merits, right? We are saying that, Your Honor. And, you know, I think it is... And they probably would want the court to say that any decision that's made in the future would be reviewable as opposed to what the first opinion said two to one. But the district court's opinion's still around, right? It is, Your Honor. It would still... We are not asking for a vacater of that decision. We're simply asking this case to be returned. And we will move to vacate the injunction, of course, and dismiss the case. And the district court did find it reviewable, right? It did. He did. And it was published? I believe it was. I would be surprised if it wasn't. But I'm pretty sure it was. So then the plaintiffs would get everything that they want, right? That is our position. Well, I mean, yes. I mean, they obviously want more than that, Your Honor. But that, you know, they would have that... So the district court enjoined TPS, right? Originally, we were talking about four countries when we saw you last. Two of those countries have received extensions some time ago, and the other two received extensions very, very recently, maybe yesterday or something like that, right? So now, is it correct that all four of the countries we were originally talking about have had TPS status extended? Yes, Your Honor. I mean, that's... To be clear about this, actually, Haiti and Sudan, which are two of the countries, were actually newly designated for TPS, which is slightly different. But essentially, the same. Fair enough. Okay. I remember you correcting me on that use of verb last time. So now, you've clarified, you're taking the position that you would like to have your appeal voluntarily dismissed, right? That's our position. Okay. And so, I just wanna ask you a question about a case called... You can correct me. Is it Bataratay? Bataratay? Bataray, yes. Yes. Okay. And in that case, the same district court judge stayed in another TPS, very similar suit, right? Pertaining to Honduras and Nepal, right? That's correct. Okay. And so, was a preliminary injunction entered in that case? It was never entered, Your Honor. The case was stayed. Only stayed. We had agreed with... But stayed pre-preliminary injunction. I guess let me... Here's what I'm trying to figure out. If there's a stay in place as to those two countries, and it depends on the outcome here, we may have a problem. But I think, and here's my question, didn't Honduras and Nepal receive extensions or renewals also? So now, they are also... They're on the same footing as the other four. Right. We didn't mention them in our letter. I think I mentioned them in the 28-J letter, if you've heard. But it's been taking... I didn't actually attach the decisions because... I'm just trying to make sure there's not an unintended consequence. There is not an unintended. There are no countries involved in this litigation, or Bataray, or any other that I'm aware of, that have not been pre-designated or... Or depended upon this appeal. Right. Okay. Thank you. So, the temporary protected status for the countries that were extended yesterday, and that's El Salvador and Nicaragua, right? That's correct. How long was that? So, what's the new date? So, the minimum or the maximum that a Secretary can extend is 18 months. Those have been extended for 18 months. Now, the various administrative reasons. And the re-designation of Sudan and Haiti. How... What's the end date for them? So, I... We mentioned this in our motion to dismiss, I believe. So, it's in there. I believe Haiti has actually been designated a second time because the original 18 months was over. And so, I think that extends into... Well, I'm not... 2024, 2025. I'm not exactly sure I can reference that. And then, Sudan, I believe, is coming up in October of this year, the 18 months, because it was, you know, 14 months ago or however that works out. And then, so the Secretary will reach a new decision about extending it then. What are the circumstances where we haven't allowed voluntary dismissal? Your Honor, I think it's effectively gamesmanship on the part of a party where a party waits until, you know, and provides no explanation for why it's seeking dismissal. And so, you're left with a potential view that the party is simply concerned about an adverse decision. And we have nothing like that here, Your Honor. I can assure Your Honors that... Well, Counsel, hold on. You're talking about gamesmanship. And I guess I'm wondering, at the beginning of this embankment, that was about February or so, it was indicated, at least in the pleadings, that counsel reached out asking whether or not there was a possibility of negotiation and was roundly rejected. Yet, on June the 12th, the embankment panel was announced. And on June the 13th, one day later, the government indicated that it was now going to designate those two countries that were left. So, can you tell me about that coincidence? Sure, Your Honor. I appreciate you're asking. And I would just like to be clear about this. I think the accusation that these decisions were, in any way, driven by the composition of this panel as baseless and, quite frankly, insulting. These were decisions that were made through a great deal of hard work. These are incredibly significant decisions that affect foreign policy, that are made at the cabinet secretary level, that were made over many, many months. And many, many months of effort went into getting these very complicated decisions correct. And yes, I agree, Your Honor. Look, I had to prepare for this en banc, too. I would prefer that it had been decided earlier. We informed courts, we informed the district court in Massachusetts that we'd have a decision by April 30th, because there was litigation there related. You know, obviously, that's what we were expecting. We wouldn't have told the court that. It took longer than expected, but I think that reflects the care and the attention that went into these very important decisions. But if there were anyone but the government here, you argued a different position on the past administration, right? Your job, I suppose. So it's not what your personal views are. But and obviously, the Trump administration and the Biden administration, it's not at all uncommon that administrations see things differently. And whoever's the next president may see it differently or the same, depending on, you know, elections have consequences. So but let me ask you this. If we were to determine this is a moot, could we decide whether the secretary's terminations of TPS statuses were lawful or must that determination be left to the district court in the first instance? Well, Your Honor, I mean, there'd be a question about the preliminary injunction status of this case. You know, I don't know how that would factor in. I mean, it's hard to see how that preliminary injunction isn't moot in light of these things. I guess, you know, if this court... That's the only thing that was ever on appeal was the preliminary injunction. Yes. And is there any relief left that can be granted at this point? I don't believe so, Your Honor. I mean, the termination decisions have been, you know, relegated to an effective status. They've been overruled. They've been explained why they were incorrect. And I think Judge Christin, as you mentioned in your dissent, the point of the relief they were seeking and the maximum they could get was a reconsideration of the decisions. And they've gotten more than that now. The as to a declaration whether the agency violated the APA. But, Your Honor, I mean, you know, first of all, the agency actions that were challenged in their APA claim are these four termination decisions. So, yes, I'm sure they would like, like the litigants often want, is a declaration vindicating their legal positions. But that is an advisory... But isn't there a broader issue here? This is my question, whether there's an ongoing controversy still, even with the change in the designations. And that is whether the agency still holds the position that they, that the secretaries do not have the discretion to consider intervening circumstances. Because if that's the case, and that's a separate matter than the particular designation of certain countries, it could repeat in theory. Your Honor, I, well, I can explain why it's unlikely to repeat in the future, if Your Honor's in that, but I think the fund, you know, the APA claim that were brought here were challenging the determination decisions. Now, their theory was that they were, you know, deferring in practice. But the challenge here is to determinations. And those have been rescinded. This case is moved, you know, they can't get relief saying that the decisions were... What if Trump wins? Your Honor, there's a lot of speculation. I mean, you're saying speculation, but it was Trump and Biden, and this was, so we've got, and then if Trump wins, which we know that, I mean, anyone's that listens to the news knows that both people are running. So, Your Honor, I mean, this court, you know... I think that's the argument that, would it be capable of repetition? Yes, I mean, Your Honor, this court is in, you know, obviously, as it knows, in the business of issuing advisory opinions on, you know, speculative contingencies, and I think... But fundamentally, you haven't acknowledged that the prior administration even changed its policy with regard to whether it would consider intervening factors that were not linked to the You haven't acknowledged there was a change, and you haven't acknowledged that that would be, if not impermissible, you would at least have to give a reasoned explanation for why you are going to do that. So, it raises the question of, are you just leaving your options open so that in the future, this administration or a future administration can do the same thing? Your Honor, I just want to be clear, and I'm sure Your Honors have read the notices that were issued yesterday. I think those explain quite clearly the issues and the decision that was made. But those notices were clever in that they linked the intervening circumstances to the original event that triggered the TPS protection. So, it kind of... Well, Your Honor, I would... It didn't say, we're saying this is an intervening event that may not be linked to the original event that triggered the TPS protection in the first place, and that that intervening event is the basis for the extension or the new designation. So, Your Honor, this is obviously getting into the merits. I'm sorry. Go ahead. I don't mean to interrupt. But it just begs the question of, are you leaving the options open to do this again? If you're not gonna acknowledge it's a change, and you're not gonna acknowledge it's not permissible, and the new notices you're registering are not saying these are intervening circumstances that are independent of the original event that triggered the protection in the first place. So, I have a few responses to that, Your Honor. First of all, I think if Your Honors look at those notices that were just issued and they compare them to the in the previous administrations, you'll see an amazing similarity between the two, right? So, I think to the extent plaintiffs are alleging that there's some practice here that's been changed, we've gone back to the old practice then. We don't agree that there was ever a fundamental change of the way that plaintiffs describe it. Obviously, we disagree with those decisions. Obviously, we think they were made in error. Obviously, we think there were factors that were considered... And what was the error there? That they didn't consider intervening circumstances not linked to the original event? That there were circumstances and facts that weren't considered that should have been if an accurate... In order to make an accurate determination of whether the TPS designation should have been extended. So, I think if you go back... So, counsel, I'm looking at El Salvador, for example. This notice says, numerous natural disasters have negatively affected El Salvador since the 2001 earthquake and have adversely impacted its ability to adequately handle the return of its nationals granted TPS, right? And then it goes on to cite events occurring in 2005, 2009, 2011, 2015, 2017, 2018, 2022, and so on. That's correct. When you and I last saw each other, I think you were arguing that the DHS had taken the position that it did not have the discretion to consider those intervening events. So, you're arguing that has not been DHS's position? What it seems to me is that what this federal register does is... Well, Judge Chen found that you took the position that you didn't have the discretion, counsel. And so, we have that finding. But this federal register does seem to revert back because it's taking into consideration other events. I agree, Your Honor. So, I can ask your friends on the other side, but I had understood their primary position to be, this is not reviewable. Sorry, your position to be, this is not reviewable. Their position to be, this is reviewable, and that there needs to be an explanation for a change. The primary thing being that if we get to reviewability, there needs to be an explanation for the change. Not really what the merits need to be in terms of what has to be considered. I didn't understand them to ever be arguing, you have to consider intervening things. I thought they just said you didn't explain why you weren't considering intervening things. And so, the APA wasn't satisfied. Am I correct on that, in your understanding? I think that accurately summarizes my understanding. Because when you answered Judge Sanchez's question, his question was more, do they have to consider the intervening things? And I have not understood that to be one of the issues on the table in this case. I agree, Your Honor. I don't think I disagree with that. And also... Plaintiffs might disagree with that. I don't know. When you were asked to change your position, but I think your fundamental position has been, this is not reviewable. Am I right? That is certainly our fundamental position. And our court's decision that took that position has been vacated. That's correct. But if you don't acknowledge a change, then you never have to give a reasoned explanation. And so, there still might be another FCC v Fox Television problem, which is what, as you say, plaintiffs have alleged here, that there wasn't a reasoned explanation for a change. But if you don't acknowledge there ever was a change, then in the future, you're not gonna give a reasoned explanation either. So we might be still in the same, at least, APA claim as we are now. Well, I mean, obviously, this is starting to get a little philosophical, Your Honor. I mean, I think we'd have to know what the future... Obviously, we'd have to have the future termination decision before us. We have a decision now. And let me... I guess this is getting to your question of whether this could recur. We have a decision, we have a district court decision finding that there was a problem here. We actually have a district court decision from New York also finding that there was a problem here. And certainly, these are factors that any future Secretary would take into account, one assumes. We also have a decision from the current Secretary reversing and explaining all the reasons why that previous determination was wrong. So I think... And we also have plaintiffs saying that these previous determinations were extreme outliers in the history of DHS. So the question of whether this could reoccur, I think, is really speculative and really no basis for concluding that it's reasonably likely to... Can I ask you, in your reply on the motion to explicitly say on page two, the government is not asking this court to hold that this case is moot? That is correct. We are only asking this court to voluntarily... To agree to voluntarily dismiss our appeal. Send it back to the district court. It's as if we never appealed in the first place. But then you're gonna go to the district court and argue for dismissal based on mootness? That's true. Is that your plan? Yes, that is our plan. And that could be appealed to us? It could be, Your Honor. So why wouldn't we just... Why aren't... Well, Your Honor, I think there are real questions about... First of all, it's in a preliminary injunction posture. So that's step one. So it would go back to the district court. And this court could find it's moot on a preliminary injunction, but not for the whole case and so forth and so forth. So if it goes back to the district court... Well, there are other cases, as we've just reviewed, that were stayed contingent upon the outcome of this one by the district court. So it would be nice to know that there aren't any unintended consequences. There are no unintended consequences. But my counsel, this isn't a trick question. I'm agreeing with you, because it seems to me that that's the way to make sure we don't have unintended consequences. If we simply allow you to withdraw your appeal, as opposed to deeming this moot, because I don't know what else the district court may have done. In other cases, this record doesn't allow us to know that. I apologize for not recognizing that. That's okay. It's just not... It was an underhanded pitch. I wasn't trying to trick you. But if I'm missing something, I wanna know it. That is a good point, Your Honor. There's another case that the district court will have to decide what to do with, and we don't think... Yeah. Alright. On the capable of repetition point, any future decision would be based on the country conditions 18 months from now, at least. So it can't be the same issue exactly, right? I agree, Your Honor. It'll be entirely different. Well, not entirely different, but it would be a different set of circumstances. But didn't the court in Cuomo recognize something similar to that, where if a cessation of  action may not be needed, but there's a possibility that it could recur? And the Supreme Court has said, you need to have a very clear signal as to whether it wouldn't happen again. And what I'm understanding is, there's still that umbrella background question, whether the government believes it doesn't have the discretion to look at these intervening circumstances. I'm not suggesting that anyone is right or wrong as to whether the government believes there are intervening events, but just whether there is still an ongoing disagreement between the two sides that could lead to a future event where this might happen again. So to discuss Cuomo for one second, I think that was a case where the fear was that the moment that litigation is over, the decision's gonna be redone. And not only that, it would be done in a way that plaintiffs won't be able to go to court and get judicial relief in time to prevent their harm. So that's nothing like the circumstance we have here. Obviously, there's no decision on termination that would come for many months from now. And even once if in the... Well, I don't know what will happen many months from now, but even if a termination occurs, there would be time. And I would also point out one point that I've been meaning to make, that I would like to make is, TPS has been around for 30 years. There have been many decisions made both on the designation and termination front. This is the first litigation that's ever arisen over that. So I think that's another factor in the likelihood of future litigation and so forth. And I do think that the Secretary has issued a new decision. I think plaintiffs would all agree it reverts back to their understanding of how agency practice has operated in the past. And I think there is no basis for concluding that in the future, there will be a reversion to this unprecedented break from presidency practice. Because it's speculative? Or because you're conceding that it ought not to have been? Or because... Did you just finish the question? Yeah. Because it's... We have a history of many administrations sort of following the same approach and then one administration not. So we don't have a historical reference point to show that this is one of those issues that flip flops every time there's a new person in the White House. That is correct, Your Honor. So it appears that the plaintiffs do not deny that the Secretary has discretion to terminate a country's TPS status. Am I right there? Yeah, I would assume so, Your Honor. Okay. But so, going back to... I think you said this, what do you understand to be the plaintiff's precise argument for allowing judicial review of the Secretary's discretionary decision? I think you said it before, but I wanna pin you down. I think their view is that the decisions here violated the APA because the Secretary departed from a practice of considering... There was a practice of considering intervening events that were not linked to the originating condition, and the previous administration departed from that practice without explanation. That's my understanding of that point. Okay, thank you. Did you wanna reserve some time before... No, sure. Before you do, let me just see... Judge Rawlinson is appearing by video. She was unable to be here in person. Judge Rawlinson, do you have any questions for counsel? No, I do not. Okay. Thank you, Your Honor. Oh, okay. What do you think is the key distinction between this case and McNary? Is it the nature of the plaintiff's claims, or is it the discretionary authority of the Secretary, or the nature of that authority? Yes, Your Honor. What's the distinction? Sure. So I think what McNary stands for is a challenge has to be to a collateral matter. That's the key language from McNary. And what we say here is plaintiff's claim here is fundamentally that the agency has changed the standard that it used to evaluate these decisions without explanation, and so used an improper standard. And Your Honor, the standard that a decision maker makes, the legal standard is not collateral to the decision. And I would point out, this court makes decisions, it announces legal standards, sometimes it changes the legal standard. No one would suggest that this court's chosen legal standard in any case was collateral to its decision in that case. And that's fundamentally, I think, our point. And McNary involved things, A, individual adjudications. This is a country wide adjudication. It involved procedural due process type arguments. There weren't translators at the hearing. There wasn't a written record. Those are collateral matters. The legal standard the decision maker made is not a collateral matter. Thank you, Your Honor. Did you wanna reserve? Sure. Thank you. Good morning, Your Honors. Ahilan Arulanandam from the UCLA Center for Immigration Law and Policy for the Plaintiffs. This case is not moot because what we have challenged is an unlawful agency practice. It is the practice of refusing to consider intervening conditions. And as Judge Sanchez and Judge Christian and Judge Friedland have suggested, they say that we have challenged the determinations. Of course, we disagreed with that. Our view was what we challenged was the practice. That was what the whole jurisdictional fight was about. Counselor, can I focus you? I mean, you may or may not be right about that on the merits. But what I would like you to focus on is, how is the preliminary injunction issue, which is the only thing before us, not over? You got more than you asked for in the preliminary injunction, as far as I can tell. And maybe on the merits, you're gonna be declaratory relief. I have no idea. We're not at that stage of the case. But I'm struggling with... We're here on a preliminary injunction motion appeal. And how is this not over with what the government has given at this point? Well, I think we would not disagree that the irreparable harm, imminent irreparable harm factor, if we were in the district court now seeking a preliminary injunction, we would not be able to meet that. I think we recognize that. How is that not fatal to your appeal then? Or to the status of this appeal? It's not really your appeal, but to the status of the appeal. Well, but I think that actually is very important, the fact that it's on appeal. Because this court could do what it did, for example, in Roman v. Wolf, the COVID case from the Adelanto Detention Center. You could say, we have the legal questions now. The legal questions before us do not concern irreparable harm. They conceded irreparable harm in the briefing below. So we answered those questions. I know that turns on the Rule 42 issue, which I wanna talk about. And then send it back to the district court to assess the implications of all these things that have happened in the last week, including the day before yesterday. That would be more appropriate because it's in the district court that they should have to argue the question whether irreparable harm, how urgent it is. And then the other thing I would say about that, Your Honor, is we don't contest, argue that what they have done is unlawful, but it is the first time in the history of the TPS statute that there has been a rescission. And they are... It is the first time in the history of the 30 years of the TPS statute that there has been a rescission of a decision that happened before. They assert inherent agency authority to do that. And I am genuinely worried, and I think it's not inconceivable that someone else could bring a challenge to that. And if that happened, then the injunction would really matter. Can I boil it down one more time? You don't want us to issue an order saying this appeal is dismissed. What is it that you want us to issue? What should it say? I think the court should find voluntary cessation applies. And that's true under Blade Law, because it is not absolutely clear that the unlawful practice challenged, which is, again, the refusal to consider intervening conditions. That's what we challenged. But can I stop you there? Because I didn't think that's what you were challenging. I thought you were challenging the failure to explain the failure to look at intervening circumstances. Both. We challenge both. And this actually, Judge Kristen made this point in the dissent. It's true that we challenged both their failure to explain the sudden break from past practice that happened here. And also, we challenged, as inconsistent with the statute, their position that they have no discretion. As Secretary Nielsen... Okay, that's different, though. You aren't saying they have to consider intervening circumstances. I didn't see an argument that you said the statute requires considering intervening circumstances. So unless you have that, I don't understand how the same thing can recur. Because 18 months from now, they're gonna look at whatever conditions, and they're gonna make whatever decision, and then you can challenge whether they've explained it or not explained it or whatever. But if there's not a requirement to do the thing you want, I don't understand... Because they took the position, Your Honor, that they couldn't consider intervening conditions. Secretary... Yeah, but why would they think that they're gonna do that again? Or maybe they... I don't know. Well, we would feel... I would be comfortable, and not just that, and not my comfort. I think it would be absolutely, at least closer to absolutely clear, which is what laid law requires, that this would not recur. If anywhere in the notice, in their briefing, or even just now, they had said, it is not true that what was happening in 2018 is consistent with what's happening now, and that what happened in the practice has actually changed, because as a legal matter, we now believe that the law at least permits the Secretary to consider intervening conditions. And if they had just said the practice was unlawful... But isn't it clear that these new notices do talk about intervening conditions? Well, I think the 2016 ones did too, and it didn't stop them there, is one thing I would say. And also, as Judge Koh was alluding to this, if you just take the one from El Salvador, it says, the conditions in El Salvador... I'm reading from the one from the day before yesterday. The conditions in El Salvador that gave rise to its TPS designation in 2001, persisted in 2018, and persist to this day. Now, it is also true, as Judge Christin noted, that they talk about things that are happening in 2020. But that was also true in 2016. In 2016, the extension for El Salvador talked about the coffee  war, and the rule of law problems from the judiciary, and all these things. And yet, nonetheless, in 2018, they wrote a determination which said, these conditions cannot be directly tied to the originating event, and therefore, justify termination. So, I certainly do not believe these are consistent. I think we see quite a whipsaw here. These look a lot like the ones from 2016. They look nothing, in my view, like the ones from 2018. But they are still taking the position that there has been no change in the legal interpretation of the statute. I can understand why that makes you a little bit crazy, but neither of you are asking us to decide that this is moot. He's... And you seem to be arguing, largely, right? That you're both... You just said, this case is not moot. And he's not asking for a mootness ruling. He's asking for us to let him tip toe back out the door. He wants to voluntarily dismiss his appeal. And that would send this back to the district court. And I think you started coming to the podium, counsel, by saying you wanna go back to the district court. I'm a little... I joined Judge Forrest in trying to express confusion about, what is it you want that's different? Right. What we want... Let me see both what we want, and then what's lacking, because I think they're related, right? What we would like is, for this court... I do think, because they have said this case is moot in their brief, even though they haven't... I'm not saying that today, but I'm saying that very clearly. Okay. Well, whether or not you address voluntary cessation, my concern is it's an Article Three issue, so I do think... But whatever, that's fine, whatever. Whether or not you address voluntary cessation, we think this court should address the questions on the merits. Jurisdiction, the APA merits claim. Obviously, if we won, then you don't have to address equal protection. But give me your best authority as to how we can do that, considering we're here on the appeal of the preliminary injunction. And it appears all the relief, based on that limited appeal, has been granted. How and why would we do that? Your Honor, any time a voluntary cessation occurs, maybe not every time, but most of the time, all the relief has been granted. So in Cuomo, for example, they said, you can have your religious services. And at that moment, when the court is looking at it, they wanted the religious services, and they were allowed to go to church and go to the synagogue. But why hasn't the redesignations and the reconsiderations of the TSP status satisfied that? Because... Well, so my point about those cases is, in that moment, after the voluntary cessation has occurred, it is at least usually true, and maybe almost always true, that there's no further thing that the plaintiffs can get, because the defendants have stopped doing the conduct that was challenged. And so my point is, even if there were no... Yeah, I wanna make sure I have two answers to this. But the first one is, even in those cases, there is no further conduct that the defendants could engage in that would satisfy the plaintiffs, and that's okay. The cases are still not moved, because it's just voluntary cessation. But the second point I wanna make is, Your Honor, if this court ruled, A, that there was jurisdiction, and B, that it is... They do have to explain the change in practice if they shift back and forth from considering intervening conditions to not. And we would also hope the legal question, the other question that Judge Kristen's dissent refers to, which is, the statute at least gives the Secretary discretion to consider intervening conditions. So they can't hide behind the statute when they claim, Oh, I'm so sorry, there's nothing we can do. Right? If we could get those two rulings, of course, we would get something that we would not otherwise... Well, you obviously wanna protect your clients for the rest of their lives, and that's admirable. As a good advocate, I'm totally with you on that. Thank you, Your Honor. But the problem is that I'm still not seeing how... If we went back, and say if you'd gotten all of this before the first argument, you would have taken a dismissal in a hot court. It seems to me that you agree that we are limited to deciding whether the Secretary's TPS terminations in 2017 and 18 are judicially reviewable. You agree that they are, but I don't see... And then you also... Or may we proceed to evaluate the lawfulness of those terminations? Then I sort of heard you say, No, we can't. So... No, no. I must have misspoken then, no. I think you can... I would want both the court to address jurisdiction, and if we win on jurisdiction, then to also address the lawfulness of them because... Again, like I said, I think voluntary cessation, even if there was nothing else, but the effect of that would, of course... If you had been here a week ago or 10 days ago, the most you could have won was the preliminary junction ruling. That's the only thing on appeal. Yes. To follow up on that... I'm sorry to cut you off, but to follow up on that, one thing that confuses me about your position here is, I understand the rulings that you want, that we have review and that this was improper. Why wouldn't you want those from the district court? Because if we address the merits, all we can say is a likelihood of success on the merits because we're at the PI stage. But if you go back to district court, maybe you get the ruling on the merits. But I don't see those as exclusive, Your Honor. It's often true that we might win a ruling on a preliminary injunction, then go back. Maybe they would get rid of the injunction itself, depending on whether they get sued in the meantime by other people, but maybe they would. But we can still go forward to obtain declaratory relief and to get summary judgment and get a final judgment. I mean... Judges on this court who have written concurring and dissenting opinions about, why are parties so aggressive about seeking rulings in the preliminary injunction stage instead of just getting a ruling at the merits stage so that you can get a full review of the issue? And this case is like a prime example of that to me. Why are you wanting to do it this way? Go... You might have an avenue to get what you actually want. Yeah. I definitely think, of course, this court, just as the three judge panel, could have also said... I think it was actually our first pitch, I think, at the... Several years ago, was just affirm on serious questions. And you can write a short opinion that affirm... As you say, it doesn't create law of the case or law of the circuit. And of course, that's still open to this court to do. I do think you'd have to at least address the jurisdictional question to do that. I'm not sure that you could, but maybe you could, I don't know. But yeah, of course, that would be open to us. The difference is, even if you did that, if we went back in the district court and got a ruling, we would still... It'd be available to us to get that declaratory relief order, and we would be fine with that. But if you dismiss it entirely and there's nothing, there's no affirmance, it's just a Rule 42 dismissal. Then, he said it himself, nothing stops them from going back. I think we will win this case. It's not moot. It's not moot under voluntary cessation doctrine. Sorry to interrupt you. Do you think a termination of TPS would realistically recur under the current administration? I guess they have preserved their authority to do it. I feel like I'm dodging your question, Your Honor. I can't imagine the current administration after issuing the current notice this past week would reverse that. I agree with you. We don't think that that's likely to happen. That's true. I will also say... So as much as we... So your argument that hinges on what may happen in a future election and whoever wins, and depending on who wins, that person would be in state determination? Right. So... That seems speculative to me. Yeah. So two answers. The law, I think, doesn't look at this as... None of this doctrine looks at this with the political reality that we know, which is that administrations go back and forth on a lot of these issues. And the law looks at it like, does the agency have the power to reverse course? So they say... They actually, in the new notices now, say that they have inherent authority. The Secretary has inherent authority to reconsider any TPS related determination, as long as it's timely. And timely isn't set by some time limit in the statute, it's set by the common law of timeliness. So I think as a legal... Even though I agree with you, I don't believe the Biden administration is going to terminate TPS for this client population. Their legal authority, certainly, they have preserved their legal authority to do that. The other point about speculative, Your Lordship, is it absolutely clear that it could not reasonably be expected to recur? It doesn't set a time limit on it. It's different from capable of repetition doctrine in that way. It doesn't set a time limit on it. Instead, the point is, will it recur as to these parties? And of course, as to these parties, that has a natural temporal limit to it too, right? Because if some future world... But will recur as to them, but it won't be the same facts. That's the problem. I mean, if you're on TPS by its very nature, it's 18 months, so it's going to recur, but it's not gonna be under the same facts. This is why the difference between whether what we're challenging is the determination, which has always been their position, or instead challenging the practice, which is our position, really matters. Deviated from the practice, that's the problem. They aren't following this practice, pretty clearly not following it anymore, right? That gets back to Judge Lee's question, one that many of my colleagues have asked. You really are asking us to speculate that another administration will revert again, aren't you? We certainly are asking the court to rule for them. When you say we speculate, if it's speculation under laid law, we win, because they have to show it is absolutely clear that the conduct will not recur, could not reasonably expect it to recur. And they're not willing, the government is not willing to say that Secretary Nielsen was incorrect when she testified before Congress, correct? Absolutely, Your Honor. These notices say there's factual error, the factual error. But of course, what her position was, and not just hers, it's in almost verbatim in three of the decision memos, that conditions that cannot be directly tied to the originating condition are off the table. That's a legal question. It's not a factual dispute. And the way they have rewritten these is not to say, oh, that was wrong, because actually you can look at intervening conditions, even though they're looking at them. Of course, they're looking at them left and right, but they haven't said that what we did was a legal mistake. And if they would disclaim that, then we would not be here, because then I think it would actually be true that we would have a legal ruling equivalent to, for example, in BRAC, they cite the COVID... So, Sean, can we just back up a minute? Forgive me for interrupting, but you just said that they're looking at interim conditions left and right, but they haven't said they're looking at legal conditions left and right. That's the problem? They haven't said that they're legally permitted to do so. But they just did so, in writing, in the Federal Register. Wait, wait, wait. Is that a yes? Yes. I just wanna make sure. Am I missing something, or you read it the same way I read it? I do agree it that way, Your Honor. I do read it that way, Your Honor. My point is just, in 2016, they did the same thing, exactly the same thing. Again, there's no reference to legal standards, but there's lots of looking at intervening conditions. And then they come in 2018 and say, you can't do that. I feel like I'm... This is exactly what you had said in your dissent. I was there with you and Judge Valhan, so I think we have clear communication on this point. Okay. Thank you. Can I ask you, right now, the administration's decisions are in the favor of your clients. Why is it in your client's interest to still be arguing that those decisions are reviewable? It seems like you have these arguments in your papers now, the Fifth Circuit might do something different. But if we can't review the Biden decisions to give your clients what they want, and no court could, isn't that better? I mean, no, Your Honor, because... Well, for one thing, because I think these, on their facts, are extremely defensible, but their decisions. But beyond that, I think it's just the concern about the whipsaw, about what comes back and forth. Well, hold on. But it's not just the whipsaw. It's what that means for the 500,000 people that are out there that are living that every single day. That's your point, isn't it? Yes, Your Honor. They know only that in 18 months, today could be the same as 2016, and 18 months could be the same as 2018. And a legal ruling would change that. So your point, just so that I understand the point, is that we can't put so much weight on the federal registers because, if I understand correctly, Secretary Kelly extended Haiti, even considering intervening circumstances, while Secretary Kelly and subsequent secretaries testified before Congress that they did not have any discretion to consider intervening conditions. And so long as the government hasn't disavowed that position, there remains a live controversy that this court could remedy in our review. That's right, Your Honor. I think that particular decision, the first Haiti extension, which is only for six months in 2017, is a very anomalous and bizarre decision for a variety of reasons. But the answer to your question is yes. They said in Congress that they could not consider intervening conditions and all of the decisions after that, that the Haiti termination, I mean, all six, the six that have been challenged here and in Qatar... To get back to Judge Forrest, I'm sorry to interrupt, but to get back to Judge Forrest's question, clearly this type of preliminary injunction order wouldn't seem to apply anymore. What kind of order, what would it be amended to in order to address this particular appeal that's before us? The normal course, when things have changed so rapidly and the parties disagree about the effect of the change, in my view... I shouldn't say the normal course, but certainly the course that happened in Hernandez-Ramon, the Ramon case, and would be to have the district court assess what effects, if any, this might have on the injunction and the need for ongoing relief. As I said, if right now, today, they had filed a motion, eliminate this injunction because there's no irreparable harm anymore, we would say, at least premature, let's see how long these decisions stay on the books. It's their job to show that the circumstances have changed in a fundamental way. We would say, let's at least see if this gets challenged. But that does not prevent this court, because there's still declaratory relief that can be provided and because the voluntary cessation doctrine applies from answering the legal questions which they had appealed on. What I would respectfully suggest the court might consider is to address those questions, jurisdiction and the APA. As I said, only discrimination if we lose on the APA. Address those questions, but leave for the district court to decide what effect, if any, these new notices have had. The other advantage of that approach is, by then, some amount of time will have passed and we'll have a better idea of whether there's gonna be litigation over what they're doing or not. But either way, it would be for the district court to assess the implications of these new decisions. And some of the fight that we've been... Sorry, go ahead. Sorry. Can you set aside mootness? What the government is asking for is a voluntary dismissal under Federal Appellate Procedure 42. So that's something that we have broad discretion over. We have to take into consideration equitable considerations, what's fair. Why don't you address that? Yes, Your Honor. I acknowledge that it's a different question. Even if the case is not moot, you certainly could... The court has authority to dismiss under Rule 42. We cite this case in Naruto, it's the case about the monkey, about where this court issued an order denying a request for dismissal under Rule 42, where both the parties had agreed to it, and citing several cases. I guess, and I've read those, the cases from other circuits, also Judge Kaczynski's opinion in Sunderlingham, which is actually quite relevant, I think, to at least some of what's happening here. The bottom line, I think, is this, you don't need to impugn them or say that there is bad faith here to recognize there is a reason why this court only issues the panels one week before the argument. And it is out of the concern, the fear about gaming, and that's why the timing issues here really matter. And it's not just the one week before the argument. The actual thing which moots this case, on their view, went into effect yesterday. It was announced day before yesterday, it went into effect yesterday. But counsel, don't you think... It just sort of strains credulity to me to think that the government came up with this decision in a week. That's not even possible, given what's being decided here. So how can we look at this? I've read all those cases too, and they had facts that suggested a very plausible argument that there was gamesmanship going on. Yes, we have this unfortunate timing in terms of it looks weird, but if you actually look at the decision that's being made and the agencies that are gonna have to be consulted, how could we ever say that they saw the panel and then changed course? Well, at the practical point, I think it's common and not improper in any way for them to have multiple decisions prepared. There's actually the Sudan... You can see that, the way these look. Well, for two of the countries, they made their decision back in November. Yes, those are different. Haiti and Sudan are different, and their redesignation... That's sort of also something we should take into consideration in looking at whether all four of these countries were playing games here. Two of them, clearly not, and the other two, a very reasonable basis to believe not either. I mean, there's 300,000 people from those countries, roughly, we're talking about all four, for whom they did not make a decision like the last two years-ish to make it, and they ended up having it effective the day before the argument. And as I said, I don't think it's unusual for them to have prepared multiple decisions. But again, the point is not whether you know it. This appeal's been pending five years, and the panel opinion was almost three years ago, and yet we get the federal register on the day before the oral argument. Yes, Your Honor, that timing is not good. And as I can't remember, I think it's Judge Mendoza, but somebody said, we did... Yeah, it is, Your Honor. We did reach out when the case went on bank. I mean, obviously, the case was in the mediation program for a long time, and then that failed. And then we did reach out when the case went on bank, and that wasn't good enough. But I think also, Your Honor, this timing question... Or let me put it this way. If they had said at any point, or even said now, that they won't appeal later, just the legal questions that are before this panel now, we would also be fine. On the Rule 42 point, again, I don't think it's moot. But if they would just agree that we will not appeal... If we win in the district court, that is not moot, which I believe this case is not moot. And then we won, as Judge Callahan had noted, jurisdiction... Any lawyer do that, though. You wouldn't do that. But I wouldn't try to dismiss an on bank appeal the week before the on bank argument either. Yes, I think the only way... If what they're saying is, of course, forget the fact that this happened a week before the argument, and they can go back and win in the district court, that's fine. Then my view is, okay, how about you don't appeal if we win on these sets of issues? Because that would actually put us in... It's not the same position, of course. I would much prefer an on bank ruling, but we don't have a bank court somehow maintain jurisdiction. Would that satisfy your concern? I haven't thought about that, but yes, I think it would solve the game. If the court is concerned about the optics of trying to dismiss an on bank argument the week before, that would definitely solve that problem. There's a footnote in the Sundaralingam Judge Kaczynski's opinion, which talks about this precise problem, that it's unique to the Ninth Circuit. It's produced by the fact that, of course, the on bank draws vary, unlike in other circuits. That might be one way to address it. But this goes back to Chief Judge McGeeh's earlier point at the start of argument, is if the government intends to go back to the district court and ask to dismiss the case for mootness, then us maintaining jurisdiction isn't gonna help that if the case gets dismissed, and there's never a merits decision that's reached as a whole. I agree with that. I think... Or otherwise, if mootness is gonna be argued below and then appeal to us, then what are we doing here? Why not address it in the first instance before us, since it's been properly briefed? That is certainly our primary view. I feel like I've sort of entered into a settlement conversation. I was trying to say if some of the court is uncomfortable with doing that, even though our view is that that's legally permitted and uncomfortable with the government... Is it your position that the government is involved in gamesmanship? No, we have no way of knowing the answer to that question, Your Honor. Well, you were happy to... When they went your way, you were happy to accept all of that. I'm not seeing the gamesmanship that sometimes you see with parties, as far as that goes. The government lawyer is in a position that different people are in charge, and there's gonna be probably... There could be someone else in another four years or another eight years or forever. That's just the nature of things. I think that might be an argument for... I think Judge Sanchez's approach is, in some ways, more doctrinally straightforward. It's like, this is a voluntary cessation case. I should say also... Excuse me, let me finish my sentence. It's a voluntary cessation case. There is no... The voluntary cessation has not cured the mootness here, so we are gonna go ahead and address the merits. It is true that there may be no irreparable harm. Merits is a preliminary injunction ruling. It is. That's what we have. It is, Your Honor. It is. And this court, as I said to Judge Forrest, it is certainly open to this court to issue a ruling that does not create the law of the case or the law of the circuit. Hirely advisory or... What would we be doing? That's all we have, counsel. But you would just be affirming a preliminary injunction based on the fact that the district court didn't commit legal error and letting them argue to the district court the question whether their very, very, very late factual changes have made the injunction no longer necessary. Counsel, we would be issuing an injunction against something that doesn't exist. Your Honor, you would not be issuing an injunction. You would not be issuing an injunction. Or we would be upholding an injunction against something that doesn't exist. You'd be saying that at the time it issued, at the time that decision issued, there was no error. Can I... That's what we're asking. Don't you get that same result if we just voluntarily dismiss because the panel's decision that you don't like is now vacated, it's off the books, it doesn't... Nobody can cite it or rely on it, and so the district court's opinion is intact. But I thought, Your Honor, that you had asked him, could they then appeal? And he said, yes. And that's the problem. It's really as simple as that. That's why I say, I don't wanna be in a settlement talk, but if they would disclaim appeal and say, we will not appeal on the issues that we have presented here, we'll go away. If they said... If they said... And you mean appeal in the sense of just still in the preliminary injunction box? I mean, his view was they could literally appeal the preliminary injunction from a mootness if they lost on mootness. The last thing I'll say, I'm out of time. If the court does have concerns about mootness, we briefed it in 24 hours because we were trying... There's a huge logistical problem, obviously, for everybody. So if there is any confusion or disagreement or a request for more clarity on the question of whether this is a voluntary cessation case, we would welcome the opportunity to brief that question. There are a number of cases, recent Supreme Court cases, where they have applied this, not just in Cuomo, at the PI stage, where the court's granting an injunction in that case. West Virginia, the EPA, parents involved. And there's so many cases where they look at conduct just like this and they say, it is not moot because it's not absolutely certain that the harm could not... That the unlawful conduct could not reasonably be expected to recur. Let me just ask Judge Rawlinson, do you have any questions for counsel? No, thank you. Thank you. Thank you, Your Honors. Thank you. Thank you, Your Honors. I just have two quick points. I just wanna be clear. We are only asking this court to voluntarily dismiss our appeal under Rule 42. We're not asking for a ruling on mootness. We're not asking to vacate anything the district court has done. We're just asking... We've changed the policy on a nationwide basis, and we're just asking that... To dismiss this appeal. But you're saying you have changed the policy? I thought you were... We've reversed the termination decisions. These are nationwide... I had a question for you. You have argued that what the district court does on an APA claim is not make any factual findings, just make legal conclusions here that have to be reviewed de novo. And below, you conceded public interest, irreparable harm, balancing of the hardships. You only contested likelihood of success on the merits. So then why shouldn't we just issue a ruling on that legal question that we would review de novo that's not dependent on any factual findings? Your Honor, the... Because the underlying final agency action has been mooted. That's what you'd be ruling on, the final agency action. But you're not asking for a mootness finding. Are you saying you're having burden for mootness? You're kind of sort of saying, I'm not arguing for mootness, but it is moot. I don't wanna make a fine... I don't wanna ask this court to make a finding of mootness. I wanna go back to the district court. So it just... It seems a little bit hard to square. Look, I just wanna be clear. These injunctions enjoin actions that occurred a long ago, that this administration has reversed and thinks we're wrong, has reversed. We do not wanna pursue an appeal of a preliminary injunction that enjoins those now completely defunct actions. That's all we're asking. If we voluntarily allow you to voluntarily dismiss, if you could just play this out, you're gonna wind up back in district court arguing about mootness, right? That's correct. So let me... I'm sorry, Judge Fors. So I wanna be clear. I understood that you were gonna go back to the district... Like, if it happens that way, you would go back to the district court and you would ask... And you would argue that the case is moot, not that the preliminary injunction motion is moot. Is that correct? We would ask the district court to dissolve the injunction and then there'd be a motion to dismiss the complaint on mootness grounds. Why do you care if they dissolve the injunction? Your Honor, I mean, I think the government is allowing preliminary injunctions to exist out in the world. But the thing is gone, so what does it matter? Yeah, I mean, true. It doesn't have any practical effect. But... So I guess I'm not... We're not asking the district court to vacate it. I'm not sure I understand. Are you gonna ask the district court to dismiss the case as moot? We will ask it to dismiss... Yes, the complaint is moot. So, and I guess another way to get it, that is, under your litigation strategy as you see it, is it possible that we would see another PI appeal? I can't imagine how you would see another PI appeal. You might see an appeal if the district court entered a permanent injunction down the road. Right, so if your motion to dismiss is denied and the plaintiffs are able to litigate the merits of their claim, which is what they want to do, and instead of being a likelihood of success on the merits, it's an actual holding by the district court that you succeed on the merits, then you're going to raise the same exact issues on appeal to this court, except it will no longer be under a PI framework, it will be on the merits. With the proviso that I don't know what the district court ruling will look like down the road, but yes, I mean, if there was eventually a PI, a permanent injunction entered or a permanent injunction setting these decisions aside. Yes. And so, don't you agree that the request from the plaintiffs to have the declaration from our court, so they agreed that there should be a voluntary cessation, but instead of a pure 42 dismissal, they want this court to weigh in on the jurisdiction, on the merits of the claim, so when you go back to the district court and you argue mootness and say the district court disagrees with you and addresses the merits of the claim, they have the ability to point to this court's ruling? Your honor, I agree that's what plaintiffs would like. All we are asking for is a rule 42B dismissal, and to find that, your honors would have to... That's a separate question. Your honors would have to find that there is some problem with the government at this stage asking for a rule 42B dismissal? You think that's the only basis that we can not grant? That is the historical basis for granting or denying. Let me ask you this, I'm sorry. Do we need subject matter jurisdiction to rule on a rule 42B motion? Your honor, I don't believe so. I mean, we're just simply asking this court to dismiss the appeal. And what about the idea that we would, as an en banc panel, maintain jurisdiction over any comeback? Yeah, your honor, that is completely fine by us, if that's what your honors would like to do. It's obviously... Because that would address the concern that there's been gamesmanship, right? Your honor, we have no problem with your honors doing that. I would say that this arguments about gamesmanship is really over the top, and I am sort of shocked at the notion that the plaintiffs would suggest that the Secretary of Homeland Security, who put tremendous effort and time, would have somehow different decisions in place if there was a different panel. I mean, that is absurd, your honor. And that is really kind of an insult to all the hard work that went into these. I agree, the timing was unfortunate. We apologize that this court had to prepare for this argument, but it had nothing to do, I can assure you. Would you concede that a ruling from the en banc court on whether there's even available judicial review here would be a helpful ruling for the lower courts? Whether there's jurisdiction here, whether there's a substantial question going to the merits of whether there's a... Or likelihood of success on an APA claim here, would that be helpful to the lower courts? Well, your honor, I mean, a decision from this court is generally helpful to the lower courts. It doesn't imply that this... Advisory opinions would be general helpful to the world, but they're still advisory opinions. All right. Let me just ask, Judge Rawlinson, do you have any questions for counsel? Yeah. No. All right. Thank you very much. Thanks to both counsel for their oral argument presentations on this interesting case. The case of Christa Ramos versus Chad Oh is now submitted, and we are adjourned. Thank you very much. All rise.
judges: MURGUIA, RAWLINSON, CALLAHAN, CHRISTEN, FRIEDLAND, LEE, FORREST, KOH, SANCHEZ, MENDOZA, DESAI